Battx.e, J.
 

 This canse ivas before tiie Court 'at December Term, 1852, upon an appeal from an interlocutory order, made In the Court below, on the motion of Mrs. West, one of the ■defendants to dissolve an injunction which the plaintiff'had 'obtained against a judgment in her favor at law, and in which her children, who are some of the defendants, were interested. Her answer being’ considered full, fair, and sufficiently responsive to all the material allegations of the bill, and having denied all the facts upon which the plaintiff’s claim to equitable relief was founded, the order -dissolving the injune
 
 *180
 
 tion was directed to be affirmed; see Busb. Eq. 30. The bill was therefore held over as an original, and after many proofs were taken on both sides, the canse was set for hearing, and transmitted to this Court, where it now conies on to be hoard.
 

 The ground upon which both the primary aud secondary relief is sought, is based upon the allegation that all the payments made to Mrs. West, and the note given to her, as mentioned in the bill, were made upon a mutual mistake of fact existing between the plaintiff and her attorney-and agent.— That such a mistake is a good ground of equitable jurisdiction, has been long and well established; but it is equally well established, that no person can claim the aid of a court of Equity, who does not exercise a reasonable diligence to ascertain the truth. Fonb. Eq. book 1, ch. 2, sec. 7, note v; 1 Stor. Eq., sec. 149, et seq. It is to the vigilant, and not the supine, that the Court gives its aid. This principle is clearly set forth, aud strongly illustrated in a case decided in this Court; see
 
 Crowder
 
 v. Langdon, 3 Ired. Eq. 476, in which the material facts -were, that the plaintiff, defendant, and one Whitaker were partners in the mercantile business, of which the defendant first, and Whitaker afterwards, were the active partners. The plaintiff being ignorant of such matters, became dissatisfied, and proposed a dissolution of the firm ; to which the defendant objected, but proposed to sell to the plaintiff bis interest in it, at a certain price, upon the basis of a statement made bj the defendant, from the books, and information received from Whitaker, and which the defendant assured the plaintiff, was correct. The amount of the debts clue from the firm, were stated from the recollection of the defendant and Whitaker, as no account of them was found in the books. The sources from, and the manner in which the statement was made ont, were known to the plaintiff. It was af-terwards ascertained that the statement was erroneous, particularly in the amount of the debts which the firm owed, and the plaintiff filed his bill for relief, upon the grounds, both of fraud and mistake. The Court declared that the proofs failed to establish the charge of fraud, and decided against the plain
 
 *181
 
 tiff upon-the ground of mistake; because he had not used reasonable diligence in endeavoring to ascertain the true condition of the partnership affairs,before he made his purchase from the defendant. In relation to this subject, it was said by the Court, that “ the general rule, unquestionably is, that an act done, or a contract made under a mistake, or ignorance of a material fact, is relievable in Equity. But, where the means of information are alike open to both parties, and when each is presumed to exercise his own judgment in respect to extrinsic matters, Equity will not relieve. The policy of the law is to administer relief to the vigilant, and to put all parties to the exercise of a proper diligence.— In like manner, where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or where the fact is doubtful in its own nature, in any such case, if the party has acted in entire good faith, a court of Equity will not interpose. Where each party is equally correct, and there is no concealment , of facts, mistake or ignorance is no foundation for equitable interference.” For these positions, the Court refer to the works which we have already cited, and also to 1 Maddock’s Ch. Pr. 62, and 1 Pow. on Con. 200.
 

 These principles, applied to the case before us, show clearly that the plaintiff is not entitled to the primary relief which lie asks against Mrs. West and her children, the widow, and next of kin of Kenneth West. The mistake under which he acted, in making the settlement with Mr. Allen, was one, into which he would not have fallen, had he used ordinary prudence and diligence to prevent it. ,-The administration bond, to which he supposed he was one of the sureties, he well knew was in the offiee of the clerk of the Comity Court, and he might, at any time, either in person, or by an agent, have inspected it. Iiis bodily infirmity, and his other excuse for not having done so, amount to nothing, because he does not even pretend-that he ever made an attempt, in any manner, or at any time, before the settlement, to see the bond, or to have it examined. But he says that his mistake was eaused by the
 
 *182
 
 positive assertion of Mr. Alien, that he was one of the sureties. He exculpates Mr. Alien from the charge of having made a wilful misrepresentation by asserting that he was laboring under a mistake. Supposing that to be so; how did it happen that
 
 he
 
 fell into the error. We think it highly probable that'lie did so, for the causes assigned by the plaintiff to explain the reason why he so readily acquiesced in the truth of Mr. Allen’s assertion. He states that he was the brother-in-law, and intimate friend of Mr. Ehodes, the administrator, and was in the constant habit, both before, and after the administration bond in'question was given,-of signing instruments for him as his surety. When Mr. Ehodes left the State, before he had made a final settlement of the estate of Kenneth West, upon which he had taken ont letters of administration, the plaintiff and his son George W. Capehart, had, or appeared to have, in some way,, the management of it. The plaintiff was undoubtedly to a considerable extent connected with the unsettled affairs of his friend and brother-in-law. — - Under these circumstances, it was not at all unlikely that Mr. Allen should suppose that the plaintiff was one of the sureties to the administration bond given by Ehodes, and should so say, but we cannot see how that can relieve the plaintiff from the imputation of negligence, in not going or sending to the-clerk’s office, to ascertain, from an inspection of the bond itself, the truth of the matter. The Court of Equity ought not to encourage such negligence, by giving relief to one-guilty of it. Especially, ought the Court to withhold its aid, since a court of Law* will not redress the alleged injury of a person who complains of a fraud, if, by the exereise of even ordinary prudence, he could have prevented it. “It is a very reasonable principle,” said Taylor, C. J., in
 
 Fagan
 
 v.
 
 Newson,
 
 1 Dev. Rep. 21, “ that the purchaser should net be entitled to an action of deceit, if be may readily inform himself as to the truth of the fads which are misrepresented.” The same principle was applied in the subsequent cases of
 
 Saunders
 
 v. Hatteman, 2 Ired. Rep. 32;
 
 Lytle
 
 v. Bird, 3 Jones’ Rep. 222, and
 
 Fields
 
 v. Rouse, Ibid 72. Iu the latter case, the alleged deceit consist
 
 *183
 
 ed in the misrepresentation of the true amount of a bond taken by the clerk and master of the court of Equity for the county of Wayne, and then in his office in the town of Golds-borough. The transaction in which the fraudulent misrepresentation was charged to have 'been made, occurred in that town, and the Court said, among other things, that “by going a few steps, it was in the power of the plaintiff to have ascertained the true amount of the bond in principle and interest; in not doing so, he took upon himself the responsibility of the correctness of the defendant’s representation; the means of ascertaining the fact were open to him equally with the defendant.”
 

 Our conclusion then, is, that the plaintiff is not entitled to the primary relief which he prays against the widow and children of Kenneth West, to recover, back the money which he paid upon the mistaken supposition that he was one of the sureties to the bond given by the administrator, of the estate of the said West.
 

 With regard to the secondary equity, sought by the plaintiff, which is, that he may be subrogated to the-rights of the widow and children of Kenneth West, against the administrator and his sureties, or at least that he may be permitted to prosecute the claim in their names against such administrator and his sureties, our opinion is in his favor. At the time when the bill was filed in 1851, the claim of Mrs. West and her children, was not barred, nor presumed to have been satisfied, for the balance found to be due them on the settlement made between the plaintiff and Mr. Allen, in 1843, which settlement was said to have been based upon an account current furnished by the administrator; see
 
 Davis
 
 v
 
 Cotten,
 
 2 Jones’ Eq. 430. The plaintiff having made the settlement, and paid the money found to be due thereon, under a mistake, cannot be deemed an officious intermeddler, and is to be considered, at least, as a purchaser for value of the equitable claim of the widow and next of kin of Kenneth West against the administrator and his sureties, and as such, entitled in this Court, to prosecute the claim for his own benefit against them.
 
 *184
 
 in the names of such widow and next of kin. As the administrator and his sureties were made parties to this suit, we are not aware of any good reason why the plaintiff may not here have the benefit of his secondary equity against them. A decree may be drawn in accordance with the principles herein declared.
 

 PeR Cueiam, Decree accordingly.