RICHMOND CEDAR WORKS v. ROPER LUMBER COMPANY.

(Filed 10 March, 1915.)

1. Deeds and Conveyances—Words of Inheritance—Estates for Life.
   A deed to lands without the use of the word "heirs" in connection with the name of the grantee, executed prior to 1879, conveys only a life estate to the grantee.

2. Reformation of Instruments—Equity—Mutual Mistake—Lapse of Time— Evidence Lost.
   Courts of equity will reform and correct a deed upon the ground of mutual mistake of the parties, in proper instances; but its jurisdiction

CEDAR WORKS *v.* LUMBER CO.

should be cautiously exercised by the courts, and the relief should be denied except in clear cases, particularly when the parties to the deed are dead and the evidence relating to the transaction has been lost by lapse of time; and an unexplained delay for an unreasonable time, with the adverse party in possession (in this case, for twenty years), will deny the right to the party seeking it.

3. **Reformation of Instruments—Equity—Mutual Mistake—Deeds and Conveyances—Connected Paper Title—Color—Evidence.**
   The fact that a party seeking to reform a deed for mutual mistake does so to enable him to set up adverse possession under color thereof against a party having the true and connected title will have weight in equity against the relief prayed for.

4. **Deeds and Conveyances—Words of Inheritance—Limited Warranty—Intent—Estates for Life.**
   It is held. that a deed to swamp lands, made in 1857, conveying all the grantor's right, title, and interest in and to the lands, with sufficient description, without the use of the word "heirs" in connection with the name of the grantee, reciting it was purchased by the grantor at a certain commissioner's sale in 1832, but no deed therefor had been received, with warranty only as to the grantor and heirs, and no other person, affords no evidence within itself that by mutual mistake the words of inheritance, necessary to create a conveyance in fee at that time, had been omitted from the instrument by mutual mistake; but, to the contrary, only a life estate was intended to be and was conveyed.

5. **Reformation of Instruments—Equity—Right to Reform—Estates—Limitation of Actions—Adverse Possession.**
   The right to reform a deed to lands for mutual mistake is not an estate in the lands, and, when corrected, the reformed instrument cannot relate back so as to render seven years possession of the lands theretofore held by the claimant such as to ripen his title therein, as against the rights of one having the connected paper title.

6. **Reformation of Instruments—Equity—Lost Deeds—Evidence.**
   The principles obtaining in actions for the reëxecution of lost deeds do not apply to suits to reform conveyances of land for mutual mistake.

APPEAL by plaintiff from *Long, J.,* at June Special Term, 1914, of GATES.

Petition to rehear an appeal disposed of at the last term without an opinion, the Court being equally divided, *Associate Justice Brown* not sitting.

The action is to determine the title to land and to recover damages for trespass thereon.

The plaintiff introduced a grant from the State to John Fontaine, of date 10 July, 1788, for the purpose of showing title out of the State.

The next deed offered by the plaintiff was one from Joseph Allyn to George T. Wallace, of date 16 March, 1857, which reads as follows:

"This deed, made this the 16th day of March, in the year 1857, between Joseph T. Allyn, grantor, to George T. Wallace, for the consid-

eration of $200 paid by the said Wallace, and the said Allyn doth give, bargain, and sell to the said Wallace all of his right, title, and interest in and to a juniper swamp, called the Fountain Swamp, situate, lying, and being in the county of Gates in the State of North Carolina, and described as follows: [Here follows description.]

"One-third of the above tract of land was sold to the late George Douglas more than twenty years since, and the said Douglas's portion was divided off by writing signed by the parties, and his third part is not included in this sale. The said tract of land was purchased of the commissioners of the estate of the late T. Proctor in June, 1832, and no deed had been made to the grantor; and the said Allyn conveys all right and title that is vested in him and his heirs and warrants against them, and no other person. Witness my hand and seal.

"Jos. T. ALLYN.    [SEAL]"

The plaintiff then offered a deed from George T. Wallace to the Richmond Cedar Works, Limited, dated 3 April, 1885, and a deed from the Richmond Cedar Works, Limited, to the plaintiff, dated 2 July, 1891.

The plaintiff alleged in its complaint that the word "heirs" in connection with the name of the grantee was omitted from the deed of Allyn to Wallace by mutual mistake, but it offered no evidence in support of this allegation except the deed itself.

The plaintiff offered evidence tending to locate the land described in the Fontaine grant, and evidence tending to show that the land described in the deed from Allyn to Wallace and the deed from Wallace to Richmond Cedar Works, Limited, and the deed from Richmond Cedar Works, Limited, to Richmond Cedar Works lay within the bounds of said grant, and locating the land described in said deed.

The plaintiff offered evidence tending to show that the land in controversy was swamp land and in a swamp of more than 2,000 acres.

There was evidence tending to show that George T. Wallace, the grantee in the deed from Allyn to Wallace, had been in adverse possession of the land in controversy continuously for more than seven years prior to 1884, but neither plaintiff nor those under whom it claims have had any possession since 1884.

The defendant introduced a number of deeds beginning with deed from the heirs of John Fontaine and deeds to those under whom it claims from them to itself, and introduced parol evidence tending to locate these deeds as covering the locus in quo, and also evidence of continuous adverse possession in itself of the land in controversy for more than twenty years prior to 1904.

At the close of all the evidence the defendant moved for judgment of nonsuit.

The motion was allowed, and the plaintiff excepted and appealed.

*Winston & Biggs for plaintiffs.*
*Small, MacLean, Bragaw & Rodman for defendants.*

ALLEN, J.  The deed from Allyn to Wallace under which the plaintiff claims conveyed only a life estate, as it was made before 1879, and the word "heirs" is nowhere used in connection with the name of the grantee (*Cullens v. Cullens,* 161 N. C., 346), and as the grantee therein is dead, there is a failure of title in the plaintiff unless the deed is reformed and converted into a fee.

The jurisdiction of a court of equity to reform and correct a deed upon the ground of mutual mistake is well established, but it is a jurisdiction which should be cautiously exercised and should be denied except in clear cases, particularly when the parties to the deed are dead and the evidence relating to the transaction has been lost by lapse of time.

The duty devolving upon the Court and the degree of proof required are well and accurately stated in *Ely v. Early,* 94 N. C., 1, which has been frequently approved, where the Court says: "That the Court may, in the exercise of its equitable jurisdiction, correct a mistake in a deed or other written instrument, such as that alleged in the complaint, is not controverted; but it will do so only where the mistake is made to appear by clear, strong, and convincing proof.  The Court must be satisfied from the evidence, beyond reasonable question, of the alleged mistake.  By the solemn agreement of the parties to it, the deed at once upon its execution becomes high and strong evidence of the truth of what is expressed in it, as between the parties to it.  One of its chief purposes is to make such evidence, and it ought not to be changed or modified except upon the clearest proof of mistake. . . .  It must stand until by a weight of proof greater than itself a court of equity, in the exercise of a very high and delicate jurisdiction, shall correct it.  The Court always acts in such cases with great caution and upon the clearest proof, and in *Wilson v. Land Co.,* 77 N. C., 452, *Mr. Justice Bynum,* having reference to a deed, said: 'The whole sense of the parties is presumed to be comprised in such an instrument, and it is against the policy of the law to allow parol evidence to add to or vary it, as a general rule.  But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, relief will be withheld upon the ground that the written paper must be treated as the full and correct expression of the intent until the contrary is established.'  The same doctrine is laid down in Story's Eq. Jur., pars. 153, 157; Pomeroy Eq. Jur., par. 859; *Rawley v. Flannelly,* 30 N. J. Eq., 612; *Burger v. Dankle,* 100 Pa. St., 113; *Browdy v. Browdy,* 7 Pa. St., 157."

Diligence is also a duty imposed upon the party seeking relief, the maxim of equity being *Vigilantibus non dormientibus equitas subvenit,*

and of this maxim Mr. Bispham in his treatise on Equity, sec. 39, says: "It is designed to provoke diligence, to punish laches, and to discourage the assertion of stale claims. By virtue of this maxim such claims are rejected in equity, independently of any statute of limitations. . . . This defense is peculiar to chancery courts, which in such cases act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, and refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights."

In *Simmons v. R. R.*, 159 U. S., 278, the Court says: "It has always been a principle to discourage stale demands; laches are often a defense wholly independent of the statute of limitations." And the same principle was declared in *Capehart v. Mhoon*, 58 N. C., 180, and in *Clements v. Ins. Co.*, 155 N. C., 61.

In the application of the maxim equitable relief was denied in *Tate v. Conner*, 17 N. C., 225, after the lapse of thirty-four years, in *Lewis v. Coxe*, 39 N. C., 199, after forty years, and in *Ditmore v. Rexford*, 165 N. C., 621, after fifty-seven years, the reason being, as stated in the *Lewis case*, that the Court cannot be sure it sees the transaction clearly 'through the dim obscurity of so long an interval.' "

We speak of a delay for an unreasonable time, unexplained and without excuse, and the evidence also shows the element of acquiescence in the assertion of a hostile and adverse claim—the possession of the defendant for twenty years.

Another consideration which weighs against the equitable relief prayed for is that the plaintiff is asking a court of equity to reform a deed to enable it to set up an adverse possession under color against a defendant, who has the true title by mesne conveyances connecting itself with the grant, upon which the plaintiff has to rely to show title out of the State.

Let us, then, examine the deed in the light of the authorities, and in connection with the circumstances that have transpired since its execution.

The strongest position in behalf of the plaintiff is that the grantor, Allyn, undertakes to convey not only his own interest in the land, but also the interest of his heirs; the argument being that if he had not had an estate of inheritance and had not intended to convey it, the word "heirs" would not have been used.

This view is entitled to consideration, but by the use of the word it also appears that he knew its meaning and effect, and an examination of the whole deed indicates caution and circumspection. The grantor is careful in wording the deed so that it shall convey, not the land, but his interest in it, and his warranty is restricted to himself and his heirs.

The reason for this is apparent upon the face of the deed, as the deed itself shows that he had no title at the time of its execution, because while he says he bought the land in 1832, he also states that he had never received a deed, although twenty-five years had elapsed, and he could not well have acquired title by possession if the *locus in quo* is correctly described in the petition as a juniper swamp, not fit for cultivation and not inhabitable by man, a part of the Great Dismal Swamp, a fit abode for bears and other wild beasts.

Instead of the deed affording clear indication of an intention to convey a fee, it shows upon its face that the grantor did not have a fee, and manifests a purpose to cut down the estate conveyed as far as possible, and a purpose to minimize liability in the event of a claim against him.

It also appears that the deed was made fifty-eight years ago, that the plaintiff has held the deed under which it claims more than twenty-four years, that neither the plaintiff nor any one under whom it claims has ever had possession of the land except that prior to 1884 George T. Wallace held possession for seven years, and that during all this time there has been no effort to assert the claim that the deed of 1857 was intended to convey a fee simple, although the evidence introduced by the defendant shows that it has been in possession for about twenty years since 1884.

Giving full effect to the whole deed and considering the attendant circumstances, we are of opinion that the relief prayed for by the plaintiff should be denied.

If, however, the deed should be reformed and converted into a fee, the plaintiff would still be without title, as upon the facts in this record the decree of reformation would not relate back so as to enable the plaintiff to claim that the seven years adverse possession of Wallace was under the deed as reformed.

Color of title and adverse possession ripening it into a true title must go hand in hand, and when Wallace was holding adversely, it was under a paper purporting to convey a life estate and not a fee; and if he was entitled to reform the deed, it was a mere right in equity, and not an estate.

In the case of *Henly v. Wilson,* 77 N. C., 218, the plaintiff claimed under a deed from one Stone to one McClennahan for life, and contended upon the trial that it appeared from the deed that it was intended to convey a fee simple, and that this vested in him an equitable estate in fee upon which he could recover; and the Court, dealing with this contention, says: "The plaintiff's counsel, on the argument, took the ground that he could maintain the action as equitable owner in possession under the provisions of C. C. P., sec. 55. That provision does not apply; for the plaintiff has *no equitable estate* as a purchaser in possession or other

*cestui que trust,* but has only a° *right* in *equity* to have Stone converted into a trustee and decreed to execute a deed in fee simple; and the fact that Stone, pending the action, executed the very deed that he would have been required to execute does not vary the case; for the deed took effect only from the time of its delivery, and Stone had no power to make it relate back to the time of the execution of the deed to McClennahan. Indeed, a court of equity has no such power, and could only have required Stone to do what he has done, namely, execute a deed in conformity to the intention of the parties."

It will be noted that the plaintiff is not asking to reform a deed which is a link in a chain of title, nor does the principle apply applicable to the reëxecution of lost deeds, as illustrated by *Hodges v. Spicer,* 79 N. C., 223, and *Phifer v. Barnhart,* 88 N. C., 333.

The petition to rehear will be dismissed and the judgment of the Superior Court affirmed.

Petition dismissed.