BROWN, J., concurring; CLARK, C. J., dissenting.
This action was instituted by the Bank of Union against the defendant R. B. Redwine and others, for the purpose of establishing its right in and to ten shares of the capital stock of the Lake Land and Lumber Company, belonging to the defendant E. C. Williams and by him assigned to the plaintiff bank as security for certain indebtedness; the immediate purpose of the action being to restrain the defendant John *Page 629 
C. Sikes, trustee for R. B. Redwine, from proceeding to sell said shares of stock under a deed of trust alleged by plaintiff to constitute a junior lien upon the same. Issue was joined by defendant Redwine on the priority of plaintiff's lien and on the amount of the debts secured thereby, the said defendant claiming that the plaintiff bank had charged defendant Williams usurious interest on the loan secured by said stock, and asking that plaintiff's debt be reduced on that account. He also invoked the doctrine of marshaling assets, and asked that before proceeding against said stock plaintiff be compelled to exhaust its security on the home place of the defendant Mrs. J. W. Griffin. Mrs. Griffin, who had signed with defendant Williams the note secured by the mortgage of her home place and by the pledge of the said corporate stock, answered that she had signed said note as a surety, and demanded that the plaintiff, before foreclosing the mortgage on her home, exhaust its security on the stock.
An injunction pending the hearing was obtained from Judge Shaw in December, 1914, and the case came on for hearing before Judge Devin at May Term, 1915. At this hearing the issues involving the priority of plaintiff's lien were tried and determined in favor of plaintiff; and it was also found by the jury and adjudged by the court that Mrs. Griffin was merely a surety on the note secured by mortgage of her home and the corporate stock. Judge Devin then referred the case to W. J. Pratt, Esq., to determine the amount of the debts of plaintiff secured by the stock, and to pass upon the question of marshaling. The referee made his report to Judge Carter at October Term, 1915, who passed upon exceptions thereto filed by both sides, and sustained plaintiff's contention that the defendant Redwine, being merely a junior encumbrancer, could not plead usury in the debt of Williams to plaintiff, and held that this was not an appropriate case for the application of the principle of marshaling assets. The court also overruled a motion to dismiss the action because usury had been charged. From these judgments of Judges Devin and Carter adverse to him the defendant Redwine appealed to this Court.
The verdict of the jury before Judge Devin was as follows:
1. Was the paper-writing from E. C. Williams to J. C. Sikes, trustee, executed by said E. C. Williams subsequent to the (562) execution of the assignment of the Bank of Union? Answer: "Yes."
2. Was the name W. S. Blakeney in said paper-writing from E. C. Williams to J. C. Sikes, trustee, inserted therein in lieu of the words, the Bank of Union, by mistake of draftsman, as alleged in the complaint? Answer: "Yes."
3. Did defendant Redwine take the paper-writing executed by E. C. Williams to J. C. Sikes, trustee, with notice of assignment by said *Page 630 
Williams to the Bank of Union of the ten shares of stock in controversy? Answer: "Yes."
4. Was the subscribing witness of the paper-writing executed by E. C. Williams to J. C. Sikes, trustee, in proving same before the deputy clerk of court, sworn upon the Holy Bible? Answer: "No."
5. Was the defendant Mrs. J. W. Griffin surety on the note for $7,500 to the Bank of Union, as alleged in her answer? Answer: "Yes."
The plaintiff, the Bank of Union, claimed the ten shares of stock under a written assignment made to it by said Williams on 12 January, 1902, which assignment was not recorded until 17 November, 1914; and notwithstanding the fact that the deed of trust made to Sikes, trustee, was dated 4 January, 1912, and the trust was accepted by Sikes, trustee, 6 January, 1912, the plaintiff contended that this deed of trust was executed subsequent to the assignment to the plaintiff. The jury found it was executed subsequently. The plaintiff further contended that it was entitled to the stock in controversy under and by virtue of another assignment. This assignment was dated 1 April, 1914, and recorded on the same date. The plaintiff further contended that the name "W. S. Blakeney" was inserted in the deed of trust to Sikes by mutual mistake of the parties or by inadvertence or mistake of the draftsman in lieu of the name "The Bank of Union." The jury so found. The defendant contends that there was not sufficient evidence of a mistake, and the judge should have so instructed the jury.
The plaintiff further contends that the defendant Redwine had notice of the assignment of the ten shares of stock to the Bank of Union, and, therefore, he took the same subject to said assignment. The jury so found.
The defendant contends that the shares of stock, as evidenced by certificate, is personal estate, and a mortgage of it as made by Williams to the plaintiff should have been recorded, and not having been recorded, no notice, however full and formal, is sufficient.
The plaintiff further contended that notwithstanding the order of probate of the clerk directing the registration of the deed of trust to Sikes for the benefit of the defendant Redwine was in due form, the execution of same was not proven upon oath legally administered, and the registration is a nullity. The jury so found.
(563) The defendant contends that for the purpose of registration or notice, the probate, being in due form, cannot be attacked by evidence aliunde. The defendant further contends that the certificate of stock for the ten shares having been placed in the possession of the trustee Sikes, this would be a pledge — a delivery of the property — and no registration was necessary. *Page 631 
The deed of trust to Sikes, trustee, after conveying certain personal property, purported to convey the certificate of stock, and then followed the following clause:
"This certificate subject, however, to any conveyances heretofore made of said certificate of stock to J. R. English or the English Drug Company, and also subject to any existing conveyance of said certificate of stock to W. S. Blakeney, and this only in event the security, including personal he now holds, when exhausted will not pay off and discharge his existing debt against Williams."
The plaintiff contended that this provision in the deed of trust does not apply to the security then held by Blakeney, but to that held by Redwine.
The effect of the judgment is to give to this language the construction contended for by the plaintiff, which the defendant contends is erroneous.
Judgment was rendered in favor of the plaintiff, and the defendant appealed.
It is well to consider, first, the exceptions taken by the defendant upon the trial of the issues submitted to the jury, as the verdict has an important bearing on the construction and legal effect of the deed of trust under which the defendant claims the certificate of stock in controversy, and the following are the material questions raised by these exceptions:
1. Are the issues sufficient to sustain the judgment correcting the deed of trust?
2. Was there sufficient evidence of mistake to justify submitting the question to the jury?
3. Was the maker of the deed of trust guilty of such negligence in failing to read the deed that equity will deny him, and the plaintiff claiming under him, the right to correct the deed?
4. Will a court of equity correct a deed upon the ground of mistake except as between the original parties?
The issue as to mistake was tendered by the defendant, and if in any reasonable view it contains the material facts, the defendant ought not to be heard to complain.
The criticism of the issue is that it does not embrace the (564) agreement of the parties; but while the agreement does not appear in the issue in express terms; it is necessarily involved, because there could be no mistake of the draftsman unless there was a previous agreement which he failed to insert in the deed. *Page 632 
Nor do we think there was such negligence on the part of the maker of the deed as will deprive him of the benefit of the equity for correction.
The general rule is as contended by the defendant, that equity helps those who are diligent and not those who are negligent, Capehart v. Mhoon,58 N.C. 178; and ordinarily one who is able to read, who signs an instrument without reading, will not be aided, Dillenger v. Gillespie,118 N.C. 737; but the rule is not of universal application, and is subject to exceptions.
Mr. Pomeroy says in his work on Equity Jurisprudence, vol. 2, sec. 856: "It has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party had not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisite for all species of relief. Their operation is, indeed, quite narrow."
A large number of authorities are collected in the notes to VallentyneLand Co. v. Immigration Co., 5 A. and E. Anno. Cases, 215, and Grievev. Grieve, 11 A. and E. Anno. Cases, 1164, supporting the position that, in the absence of fraud, the true test is whether the party (565) seeking correction acted as one of ordinary prudence under the circumstances.
We have also said: "The law does not require a prudent man to deal with every one as a rascal. There must be a reasonable reliance upon the integrity of men, or the transaction of business, trade, and commerce *Page 633 
could not be conducted with that facility and confidence which are essential to successful enterprise and the advancement of individual and National wealth and prosperity. The rules of law are founded on natural reason and justice, and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering they are well defined and settled." Walsh v. Hall, 66 N.C. 238, approved in Leonard v. PowerCo., 155 N.C. 14.
Applying these principles to the evidence, we cannot say that the maker of the deed is barred of his equity because of his negligence in failing to read the deed.
He testified, in substance, that he had agreed to execute a deed of trust for the benefit of Redwine; that Redwine prepared the deed; that the deed was read in the office of Redwine, and when he, the maker, discovered the certificate of stock was in the deed, he refused to sign, stating that he had already assigned the stock to the Bank of Union; that Redwine then said it would not hurt to make it subject to the paper of the Bank of Union; that it was agreed that the deed should be changed so that it would be made subject to the paper of the bank; that Redwine said he would make it subject to the paper of the bank, and turned to his desk and interlined the deed, and that he then signed the deed, relying upon the promise of Redwine to make it subject to the paper of the bank.
One of ordinary prudence, knowing the high character and intelligence of Mr. Redwine, might under these circumstances reasonably sign the deed without reading it.
Nor do we think that the equity of correction is confined to the original parties to the deed. It has been held otherwise at this term in Sills v.Ford, in which the authorities are collected and discussed in an elaborate opinion by Associate Justice Walker, and that case substantially covers all the exceptions arising on the trial of the issues.
The remaining question is whether there was evidence of mistake, and this must be answered against the defendant.
The equity to correct an instrument when by the mistake of the draftsman it is not drawn according to the prior agreement of the parties has been recognized from the earliest times, and we will only refer to a few of the later authorities.
The Court says, in King v. Hobbs, 139 N.C. 172: "The plaintiff and the defendant then went to a justice of the peace to have their contract put in writing, and the justice, evidently by inadvertence or mistake (whether of himself or the parties makes no difference), (566) omitted a material stipulation. In such case all the authorities are agreed that the instrument will be reformed so as to express the true intent and meaning of the parties. *Page 634 
"This is not an instance of an essential mistake or misunderstanding in the agreement itself, nor where the written instrument is supposed to embody the first and only contract of the parties, but is a case of an error of expression where the parties have come to a definite agreement before hand, and, in the endeavor to put this agreement in writing, a mistake is made, so that the instrument as drawn does not, in some material point, express the contract it was intended to evidence. In 20 A. and E. Enc. (2 Ed.), p. 823, it is said: `That in mistakes of this kind the only inquiry is, Does the instrument contain what the parties intended that it should, and understood that it did? Is it their agreement? And it is wholly immaterial whether the defect is a statutory or common-law requisite, or whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect.' The authorities are numerous and fully bear out this statement of the doctrine. . . . `Nor will the fact that the defendant denies that there is a mistake, and testifies that the deed was drawn according to the intention of the parties, prevent the court from granting the relief if it is satisfied that the deed is not in accordance with the agreement, but ought to be so.'" In Arthur v. McClure,166 N.C. 144: "It is said in 34 Cyc., 908, to be settled by a host of authorities that where because of mistake an instrument does not express the real intention of the parties, equity will correct the mistake, unless the rights of third parties, having prior and better equities, have intervened. This is done, not for the purpose of relieving against a hard or even oppressive bargain or to give either party a better one, but simply to enforce the agreement as it was made and to prevent the injustice which would ensue if this is not done. . . . Whenever an instrument is drawn with the intention of carrying into execution an agreement previously made, and by mistake of the draftsman or scrivener it fails to do so, the mistake will be corrected and the original contract enforced according to the real intention of the parties"; and in Shook v. Love, 170 N.C. 99, a mistake will be corrected "when it is the mistake of the draftsman who is intrusted to prepare the instrument."
The deed bears evidence of mistake on its face, because in the absence of mistake there could be no reason for inserting the name of Blakeney in the deed, when he held no securities of the maker of the deed, Williams, and to whom he was not indebted.
There is also direct evidence of the maker of the deed, before recited, that the defendant Redwine agreed to interline the deed and make it subject to the claim of the Bank of Union, and that instead of doing so he wrote it subject to the claim of Blakeney.
(567) This can be explained only on the ground of fraud or mistake, and the plaintiffs do not charge fraud. *Page 635 
When the high character of the parties is considered, the reasonable conclusion is that the mistake occurred because Mr. Blakeney was president of the Bank of Union and had charge of its affairs, and one or the other of the parties spoke of him, when referring to the bank.
We, therefore, conclude that no error has been committed in the trial before the jury.
If the findings upon the first and second issues are supported by evidence, and are not disturbed, it becomes necessary to determine the meaning of the language in the deed to Sikes, trustee, as follows: "This certificate subject, however, to any conveyances heretofore made of said certificate of stock to J. R. English or the English Drug Company, and also subject to any existing conveyance of said certificate of stock to W. S. Blakeney, and this only in event the security, including personal he now holds, when exhausted will not pay off and discharge his existing debt against Williams."
It is the latter part of this stipulation, "and this only in event the security, including personal he now holds, when exhausted will not pay off and discharge his existing debt against Williams," that is in dispute.
There are three possible constructions of this clause. The first is that Blakeney is required to exhaust other securities before resorting to the stock to discharge his existing debt. This must be rejected, because Williams was not indebted to Blakeney, and Blakeney held no securities, personal or otherwise, and the jury has found that his name was inserted in the deed by mistake.
We must, then, adopt one of the other two constructions, the plaintiff contending the duty of exhausting other securities is imposed on the defendant, and the defendant that it is imposed on the plaintiff bank.
The deed of trust was drawn by the defendant Redwine, and the bank was not a party to it, and was not represented when it was prepared.
We may, then, well apply the rule apparently well settled, "that words will be construed most strongly against the party who uses them" (9 Cyc., 590), or, as stated in 6 R. C. L., 854, "A written contract should, in case of doubt, be interpreted against the party who has drawn the contract."
This rule is not conclusive or controlling, but is accepted as an aid in determining the meaning of the parties.
It is also "a fundamental rule of construction that the courts may look not only to the language employed, but to the subject-matter and surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." Merriam v. U.S.,107 U.S. 441; R. R. v. R. R., 147 N.C. 382. *Page 636 
(568) "To ascertain the intention regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects they had in view." Bank v. Furniture Co., 169 N.C. 180.
Let us, then, look at the surrounding circumstances, the condition of the parties, the subject-matter, and the object the parties had in view.
When the finding upon the first issue is read in connection with the evidence, we find that on the same day the deed was executed to Sikes, trustee, but prior thereto, the debtor, Williams executed a written transfer or assignment of the stock to the plaintiff bank as a security for debt, and that there is no requirement in that instrument that the bank must exhaust other securities before resorting to the stock.
Is it not reasonable to conclude, as the two papers were executed to different parties on the same day, dealing with the same subject-matter, if the restriction appearing in the deed to Sikes, trustee, was intended to refer to the bank, it would have been inserted in the assignment to which it was a party; and if it refers to the defendant Redwine, do we not find it where it would naturally appear?
The debtor Williams had already assigned the stock to the bank, and it is not to be believed that, in a subsequent deed, which he intended to make subject to this assignment, he attempted to impair its effect without the consent of the bank.
Again, the clause in the deed of trust must be read in connection with the verdict, which finds that the words "W. S. Blakeney" were inserted by mistake in lieu of the words "the Bank of Union," and, in legal effect, that it was the intention of the parties for the clause to read as follows: "The certificate subject, however, to any conveyances heretofore made of said certificate of stock to J. R. English or the English Drug Company, and also subject to any existing conveyance to the Bank of Union, and this only in the event the security, including personal he now holds, when exhausted will not pay off and discharge his existing debt against Williams."
The maxim, "Mala grammatica non vitiat chartam," is applied when it appears that the instrument has been prepared by one unskilled in the use of language, and when the grammatical construction is at variance with the intent of the parties as indicated by the whole instrument; but if it appears that it is the work of the educated, intelligent draftsman, grammatical construction and arrangement will be considered, and here the pronouns "he" and "his" used instead of "it" and "its" naturally refer to the defendant, and not to the bank.
Neither party has seemed to attach any significance to the use of the word "personal," presumably because both the bank and the defendant Redwine had personal security, and it appears from the evidence of the latter that he had indorsements on some of his debts. *Page 637 
We are, therefore, of opinion that the true interpretation of the clause in the deed now before us is that the certificate of stock (569) was assigned as a security for the debt due the defendant Redwine, subject to the prior assignment to the plaintiff, with the restriction that he (Redwine) could not resort to the stock until he had exhausted his other securities; and thus understood, when considered in connection with the verdict finding that the words "W. S. Blakeney" were inserted in lieu of "the Bank of Union," and that the deed was executed after the assignment to the plaintiff, it is not necessary to consider the other interesting questions, argued with much learning and ability, as to whether the defendant's interest in the stock is that of pledgee or mortgagee, whether the probate of the defendant's deed is defective on account of the witness by whom the execution was proved being sworn with uplifted hand, before a woman, who purported to take the probate as deputy clerk, or whether parol evidence is admissible to attack the probate; because if a pledge of a mortgage duly probated and registered, and if the probate cannot be attacked, it is on its face and by its terms, under the construction we have placed on it, subject to the assignment to the plaintiff. Hinton v. Leigh, 102 N.C. 28; Bank v. Vass,130 N.C. 593.
In the last case the words in the mortgage following the description of the land, "said 239 3/4 acres subject to a mortgage or deed of trust for about $1,900, balance of purchase money on the same," were held sufficient to establish a trust in favor of the holder of the first mortgage, although registered after the second mortgage.
In declining to pass on the other question raised we must not be understood as entertaining any doubt as to the right of a woman to hold the office of deputy clerk of the Superior Court, and we mention it lest citizens might be misled by our silence to jeopardize their titles. That the position is, by statute, an important public office is clear from the duties to be performed; that deputies are required to take and subscribe the oaths required of clerks (Rev., sec. 898); that the clerk is required to make a record of the appointment of the deputy in his own office and to require it to be registered in the office of the register of deeds (Rev., sec. 899); that the clerk is required to make a record of the removal of the deputy from "his office" (Rev., sec. 899); that the deputies are subject in all respects to the laws applicable to clerks (Rev., sec. 900); and that they may administer oaths only if they are "sworn officers" (Rev., sec. 2350); and if it is a public office, a woman cannot hold it until the Constitution is changed. S. v. Knight, 169 N.C. 333.
It is unnecessary to repeat the reasons given for the decision of the Court in the Knight case, but none of them were based on the inferiority of women or their unfitness for office. The propriety and wisdom *Page 638 
of female suffrage, and of the eligibility of women to hold office are political questions, which must be settled by the people, and which we cannot discuss or consider in the determination of legal questions.
(570) We simply declare the law as we find it, without usurping the power to change the Constitution, a power which the people have reserved to themselves.
The question is also raised as to the right of the defendant Redwine to plead usury in the debt between the defendant Williams and the paintiff [plaintiff]; but as we understood it to be admitted on the argument, and the admission seems to be borne out by the record, that this plea, if sustained, would not afford any relief to the defendant if the claim of the plaintiff to priority was upheld, which we have done, we do not consider it.
The motion to dismiss the action because it appears that some usurious interest has been charged cannot be allowed.
The statute prescribes the penalties for usury and does not declare that no action may be maintained upon contracts tainted with illegal interest, and numerous precedents for such actions in law and equity may be found.
The facts found by the referee and the judge, when reviewing the report, seem to be fully supported by the evidence.
No error.