This controversy involves the priority of liens. The evidence tended to show that on 6 February, 1930, the defendant, Horne, executed and delivered to F. F. Fagan, trustee for the North Carolina Bank and *Page 741 
Trust Company, to secure notes for $15,000, a chattel mortgage or crop lien upon the crops raised by defendant upon his lands during the year 1930. The plaintiff is engaged in the business of selling fertilizer and in March, 1930, the defendant Horne discussed with the agent of the plaintiff the purchase of fertilizer. The defendant said: "I told him I could give him a second crop lien. I told him that the North Carolina Bank and Trust Company had the first crop lien in the amount of $15,000. After my discussion with Mr. Marshbourn I went with him to Baltimore, the home office of M. P. Hubbard and Company, and discussed the matter further with W. P. Crenshaw, its president. . . . Mr. Marshbourn, Mr. Crenshaw and I were the only ones present at this conversation. As to the security which I was in a position to give the fertilizer company for such advances as they might make to me, I gave Mr. Crenshaw the same information which I had given Mr. Marshbourn. . . . Before we left his home he said he would take up with his board the matter of credit he was going to extend me for fertilizer. I discussed with Mr. Crenshaw the collateral I could give for the amount of fertilizer. I discussed with Mr. Crenshaw the collateral I could give for the amount of fertilizer that I would require. I do not recall anything that Mr. Marshbourn said. . . . I told Mr. Crenshaw that it would be a second mortgage; that the first lien had already been given to the North Carolina Bank and Trust Company for $15,000." Subsequently the plaintiff agreed to furnish fertilizer to the defendant Horne and a chattel mortgage or crop lien upon the crops of the defendant was prepared and presented to the defendant for signature. This chattel mortgage and crop lien was dated April, 1930, and secured an indebtedness of $11,848.12 due the plaintiff for said fertilizer for the year 1930, including a balance past due for fertilizer furnished theretofore. This mortgage covered twenty-one mules and all crops grown by the defendant and his tenants during the year 1930 upon said lands. With respect to the execution of this instrument, the defendant said: "The mortgage was then drawn and signed in Mr. Marshbourn's office. I read the paper and the only objection I raised to it was the guarantee — that I guaranteed it against prior lien. I told him that I had told him there was a first mortgage on it. He said registration — that would not make any difference — registration would take care of that. I then proceeded to sign it. I think this was in April. I later got $750.00 during the summer. When I signed the first mortgage in April I did not know that the paper from me to F. F. Fagan, trustee, which I showed you a moment ago, had not been legally recorded in Edgecombe County. If I had known it, I could not have signed the paper upon the statement made by Mr. Marshbourn. . . . I do not remember just when I found it out, but it was sometime later." The defendant further testified *Page 742 
that he raised an objection to signing the Hubbard mortgage because the mortgage contained a clause warranting the property therein described "to be free and clear from all other liens and encumbrances." Defendant said: "I knew I had given this other paper, and knew Marshbourn knew it, and I called that to his attention. . . . I objected to the provision in the mortgage, and after he told me that was perfectly all right, then I agreed to sign the paper as it was without taking out that provision. . . . If I had struck this out, I would have wanted something else put in. I would have wanted the fact that the bank had a prior lien. I would have wanted something like that put in. I told Marshbourn the bank had a prior lien. I wanted either to strike the objectionable provision out of the paper or put an exception there. He told me it was not necessary to put any provision in this paper that was not there. . . . I told him it was subject to a first lien that had been given the bank. I was doing that for my own protection. . . . Sometime in the fall in a conversation which I had with Marshbourn he told me the bank's paper had not been recorded and that his company had a first lien." The deed of trust of Fagan, securing an indebtedness of $15,000, due the North Carolina Bank and Trust Company, through inadvertence, was filed for registration on 6 February, 1930. The plaintiff's mortgage, dated 17 April, 1930, was duly recorded and properly indexed on or about 17 April, 1930. The plaintiff contended that it had a first lien upon the crops and personal property of defendant for the reason that its paper was properly recorded and indexed in April, 1930, whereas the paper of the North Carolina Bank and Trust Company, although executed in February, 1930, and filed for registration at that time, was not properly registered and indexed until 21 November, 1930. It was alleged that it was understood and agreed that the plaintiff's mortgage should contain a provision subordinating it to the other mortgage or deed of trust of the bank, and that such provision was omitted by the draftsman by mistake of parties.
The following issues were submitted to the jury:
1. "Did plaintiff, in April, 1930, and in July, 1930, agree with defendant Horne to advance him fertilizers for the year 1930 upon crop liens and chattel mortgages to be subject to defendant bank's prior lien of $15,000, as alleged in the answer?"
2. "Was a provision subjecting plaintiff's liens to the lien of defendant bank omitted by the mutual mistake of Horne and the plaintiff's agent as to proper registration of the bank's paper, as alleged in the answer?"
3. "Was a provision subjecting plaintiff's lien to the lien of defendant bank omitted by a mistake on the part of Horne, accompanied by fraudulent concealment on the part of the plaintiff's agent, as alleged in the answer?" *Page 743 
The jury answered the first issue "Yes," the second issue "Yes," and did not answer the third issue.
From judgment upon the verdict decreeing that the lien of the deed of trust to Fagan, trustee for the North Carolina Bank and Trust Company, was a prior lien to the instrument held by the plaintiff, plaintiff appealed.
This cause was considered upon a former appeal, and the opinion of the Court is contained in 203 N.C. at page 205. Upon the former appeal the law of reformation and mutual mistake was fully discussed and applied to the facts then existing, and a new trial was awarded because of error in the instructions given the jury. The jury found that the plaintiff and the defendant, Horne, made an agreement that the bank's lien securing an indebtedness of $15,000, should be a first lien upon the property, and that such agreement was omitted by the mutual mistake of Horne and the plaintiff's agent, Marshbourn. Hence it must be determined whether the testimony of the defendant constituted sufficient evidence of mutual mistake, to warrant a submission of issues to the jury. The following facts must furnish the basis for a proper solution, to wit: (a) Horne informed the president of plaintiff and its agent, Marshbourn, at the time of the negotiation that he had given the bank a first lien on his crop and that plaintiff's paper would therefore be a "second mortgage." (b) When the paper was drawn and presented to Horne for signature he objected to the form of the instrument because it failed to mention or refer to the fact that the bank had a first lien upon the property. (c) Thereupon plaintiff's agent, Marshbourn, assured Horne that the omission of such a provision made no difference for the reason that registration would furnish the contemplated priority.
Obviously both parties contemplated at the time, that the deed of trust given by Horne to the bank should constitute a first lien upon the property. Moreover, the foregoing facts, together with all the surrounding circumstances disclosed by the evidence, are sufficient to warrant submission of the issues to a jury. See Bank v. Redwine, 171 N.C. 559,88 S.E. 878; Story v. Slade, 199 N.C. 596, 155 S.E. 256.
There are other exceptions in the record, but they are not deemed of sufficient importance to overthrow the judgment.
Affirmed. *Page 744